People v Ivybrooke Equity Enters., LLC (2019 NY Slip Op 06299)





People v Ivybrooke Equity Enters., LLC


2019 NY Slip Op 06299


Decided on August 22, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 22, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., SMITH, CARNI, AND CURRAN, JJ.


594 CA 18-01433

[*1]THE PEOPLE OF THE STATE OF NEW YORK, BY ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL OF STATE OF NEW YORK, PETITIONER-APPELLANT,
v
IVYBROOKE EQUITY ENTERPRISES, LLC, RESPONDENT-RESPONDENT. 






LETITIA JAMES, ATTORNEY GENERAL, ALBANY (ROBERT M. GOLDFARB OF COUNSEL), FOR PETITIONER-APPELLANT.
ZDARSKY, SAWICKI & AGOSTINELLI LLP, BUFFALO (DAVID E. GUTOWSKI OF COUNSEL), FOR RESPONDENT-RESPONDENT. 


 Appeal from an order and judgment (one paper) of the Supreme Court, Erie County (Diane Y. Devlin, J.), entered June 27, 2018. The order and judgment, among other things, vacated an injunction issued May 17, 2017. 
It is hereby ORDERED that the order and judgment so appealed from is unanimously modified on the law by denying respondent's cross motion in part, reinstating the petition insofar as it sought a permanent injunction, granting the petition to that extent and reinstating the permanent injunction issued May 17, 2017 to the extent that it enjoined and restrained respondent from violating section 71-3 (A) of the West Seneca Fair Housing Code, and as modified the order and judgment is affirmed without costs.
Memorandum: Petitioner commenced this proceeding pursuant to Executive Law § 63 (12) seeking, inter alia, an injunction prohibiting respondent—a landlord who owns a residential apartment building—from violating West Seneca Fair Housing Code (WSFHC) § 71-3 (A), which prohibits discrimination based on, inter alia, a person's "source of income." Specifically, petitioner alleged that respondent was engaging in impermissible "source of income" discrimination by refusing to accept as rent payment rent subsidies, i.e., vouchers, that were received pursuant to section 8 of the United States Housing Act of 1937 (hereinafter, Section 8) (see 42 USC § 1437f). Petitioner appeals from an order and judgment that, insofar as appealed from, granted respondent's cross motion for a summary determination, dismissed the petition, and vacated a permanent injunction compelling respondent to comply with WSFHC § 71-3. As a preliminary matter, we note that Supreme Court failed to set forth its reasons for its determination, thus making it difficult for this Court to review this case (see generally McMillian v Burden, 136 AD3d 1342, 1343 [4th Dept 2016]).
We agree with petitioner that the court erred in granting that part of respondent's cross motion seeking to vacate the permanent injunction insofar as it compelled respondent to comply with WSFHC § 71-3 (A), and we therefore modify the order and judgment accordingly. Under Executive Law § 63 (12), petitioner is invested with "broad authority to investigate repeated . . . illegal acts' . . . in the carrying on, conducting or transaction of business' " (Matter of Roemer v Cuomo, 67 AD3d 1169, 1170 [3d Dept 2009], quoting § 63 [12]; see People v Greenberg, 21 NY3d 439, 446 [2013]). In the course of such an investigation, petitioner may "obtain permanent injunctive relief under . . . Executive Law § 63 (12) upon a showing of a reasonable likelihood of a continuing violation based on the totality of the circumstances" (People v Greenberg, 27 NY3d 490, 496-497 [2016]).
Here, petitioner's entitlement to an injunction depends on whether the WSFHC's [*2]prohibition of source of income discrimination requires landlords to accept Section 8 vouchers. "[W]here the . . . language [of a statute or ordinance] is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used" (Patrolmen's Benevolent Assn. of City of N.Y. v City of New York, 41 NY2d 205, 208 [1976]). "The . . . text [of a statute or ordinance] is the clearest indicator of legislative intent and the courts should construe unambiguous language to give effect to its plain meaning" (Matter of DaimlerChrysler Corp. v Spitzer, 7 NY3d 653, 660 [2006]; see Matter of Monroe County Pub. School Dists. v Zyra, 51 AD3d 125, 130 [4th Dept 2008]).
WSFHC § 71-3 (A) provides that "[i]t shall be unlawful . . . [t]o refuse to sell or rent or refuse to negotiate for the sale or deny a dwelling to any person because of race, color, religion, sex, age, marital status, handicap, national origin, source of income or because the person has a child or children" (emphasis added). Remedial legislation such as WSFHC § 71-3 (A) " should be liberally construed to carry out the reforms intended and to promote justice' " (Kimmel v State of New York, 29 NY3d 386, 396 [2017]). " A liberal construction . . . is one [that] is in the interest of those whose rights are to be protected, and if a case is within the beneficial intention of a remedial act it is deemed within the statute [or ordinance], though actually it is not within the letter of the law' " (Matter of Dewine v State of N.Y. Bd. of Examiners of Sex Offenders, 89 AD3d 88, 92 [4th Dept 2011], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 321, Comment at 491 [1971 ed]).
We conclude—as respondent correctly concedes—that Section 8 vouchers constitute a "source of income" under WSFHC § 71-3 (A). Such vouchers are plainly a recurrent benefit, measured in terms of money, that constitute financial gain to the recipient. Although the term "source of income" is undefined in the WSFHC, similar ordinances enacted in other local codes have expressly included Section 8 vouchers as a source of income (see e.g. Tapia v Successful Mgt. Corp., 79 AD3d 422, 423 [1st Dept 2010]; see also Administrative Code of City of NY §§ 8-102 [25]; 11-243 [k]), which suggests that such vouchers are a "source of income" under the broad language of the WSFHC.
We reject respondent's contention that the WSFHC merely requires consideration of Section 8 vouchers as an income source, and does not also require a landlord to accept such vouchers as a form of payment. Our reading of the WSFHC's prohibition against source of income discrimination is that it includes a prohibition against refusing to accept that form of income as rent payment. In our view, it would be illogical to conclude that a landlord complies with the WSFHC by including the value of a prospective tenant's Section 8 vouchers for purposes of ascertaining whether the tenant satisfies a threshold income level to afford renting the apartment, while concomitantly refusing to accept that income as payment of rent. We are generally mindful not to read ordinances in a manner that would render the ordinance "absurd" (McKinney's Cons Laws of NY, Book 1, Statutes § 145), or that would "lead to objectionable and unreasonable consequences" (Dewine, 89 AD3d at 92; see McKinney's Cons Laws of NY, Book 1, Statutes §§ 141, 143; Long v State of New York, 7 NY3d 269, 273 [2006]). To accept respondent's interpretation would negate the underlying purpose of this remedial ordinance—which, as we noted above, ought to be liberally construed to achieve its legislative purpose (see Kimmel, 29 NY3d at 396; Dewine, 89 AD3d at 92).
Supporting our interpretation, we note the recent enactment by the New York State Legislature of amendments to the State Human Rights Law prohibiting discrimination based on "lawful source of income" (L 2019, ch 56 [amending, inter alia, Executive Law §§ 292, 296]). That legislation specifically includes Section 8 vouchers as a "lawful source of income" (L 2019, ch 56). We further note that those amendments to the State Human Rights Law do not render this proceeding moot or preempt WSFHC § 71-3 (A) because "[t]he State Human Rights Law was not intended to preempt the field of antidiscrimination legislation" (Bracker v Cohen, 204 AD2d 115, 115 [1st Dept 1994]), and nothing in the WSFHC "prohibits what would be permissible under State law []or imposes . . . additional restrictions on rights granted under State law" (id. at 116).
To the extent respondent argues that it is improper to read the WSFHC in a way that compels it to participate in the voluntary federal Section 8 program, we note that "[d]espite the voluntary nature of the section 8 program at the federal level, state and local law may properly provide additional protections for recipients of section 8 rent subsidies even if these protections [*3]could limit an owner's ability to refuse to participate in the otherwise voluntary program" (Kosoglyadov v 3130 Brighton Seventh, LLC, 54 AD3d 822, 824 [2d Dept 2008]; see also Rosario v Diagonal Realty, LLC, 8 NY3d 755, 764 n 5 [2007], cert denied 552 US 1141 [2008]; 24 CFR 982.53 [d]).
We have considered petitioner's remaining contentions and find that they do not warrant further modification or reversal of the order
and judgment.
Entered: August 22, 2019
Mark W. Bennett
Clerk of the Court